**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| BETTY LOU HESTON; et al., | No. 09-15327 |
| Plaintiffs - Appellees, | D.C. No. 5:05-cv-03658-JW |
| v. | |
| TASER INTERNATIONAL, INC., | MEMORANDUM[*] |
| Defendant - Appellant, | |
| and | |
| CITY OF SALINAS; et al., | |
| Defendants. | |

| | |
|---|---|
| BETTY LOU HESTON and ROBERT H HESTON, individually and as the personal representatives of Robert C. Heston, deceased, | No. 09-15440 |
| | D.C. No. 5:05-cv-03658-JW |
| Plaintiffs, | |
| and | |
| MISTY KASTNER, as Administrator of the Estate of Robert C. Heston, Deceased, | |

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Plaintiff - Appellant,

v.

TASER INTERNATIONAL, INC.,

Defendant - Appellee,

and

CITY OF SALINAS; et al.,

Defendants.

Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

Argued and Submitted October 7, 2010
San Francisco, California

Before: RYMER and N.R. SMITH, Circuit Judges, and LEIGHTON, District
Judge.**

1. TASER waived its argument that the district court's causation instruction

misstated California law because the record reflects no objection from TASER

"stating distinctly the matter objected to and the grounds for the objection." Fed.

R. Civ. P. 51(c)(1); *see Affordable Housing Dev. Corp. v. City of Fresno*, 433 F.3d

1181, 1196 (9th Cir. 2006) ("Failure to object to an instruction waives the right of

---

** The Honorable Ronald B. Leighton, United States District Judge for the
Western District of Washington, sitting by designation.

2

review.").  Even if the objection had been raised during the instruction conference, it should have been subsequently raised and preserved on the record.

2.  The district court did not err in instructing the jury on the standard for evaluating expert testimony because, "looking to the instruction as a whole, the substance of the applicable law was [] fairly and correctly covered."  *Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1092 (9th Cir. 2007) (internal quotation marks and citation omitted).  The "reasonable medical probability" instruction requested by TASER did not reflect a new approach to causation.  *Lineaweaver v. Plant Insulation Co.*, 37 Cal. Rptr. 2d 902, 906 n.2 (Ct. App. 1995).  Indeed, the term "reasonable probability" simply means "more likely than not," *id.* at 906, and the term "medical" is "no more than a recognition that [a particular case] involve[s] the use of medical evidence," *Rutherford v. Owens-Illinois, Inc.*, 941 P.2d 1203, 1219 n.11 (Cal. 1997).  Here, the district court instructed the jury that "Plaintiffs have to produce evidence which, considered in light of all the facts, leads you to believe that what Plaintiffs claim is *more likely true than not . . . .*"  The district court's instruction reflects the "more likely than not" standard of proof, which is the only substantive standard in the phrasing requested by TASER.

3.  The district court did not abuse its discretion by qualifying and admitting expert testimony from Heston's witnesses, Drs. Myers and Haddix, under *Daubert*

3

*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Dr. Myers is a board-certified cardiologist with extensive experience in the field of cardiac electrophysiology.  Dr. Haddix is a board-certified medical examiner at Stanford University who has performed thousands of autopsies like the one she performed on Heston.  Both witnesses were sufficiently qualified by "knowledge, skill, experience, training, or education" to testify regarding the effects of the M26 TASER device on Heston's body and the ultimate causes of his death.  *See* Fed. R. Evid. 702.  Additionally, the studies on which the experts relied were sufficiently analogous to this case to support the expert witnesses' theories of causation such that the district court did not abuse its discretion in permitting the experts to so testify.  The studies demonstrated a relationship between TASER deployments and blood acid levels that could be aggravated by additional factors at play in this case, such as the numerosity and duration of TASER deployments and the victims's already-enhanced oxygen needs and blood acid levels.

4.  However, the district court abused its discretion when it affirmed the jury's compensatory damages award to the estate.  While the estate presented evidence suggesting that Heston was treated by emergency medical technicians, transported to the hospital, and received continuing medical treatment, it presented no evidence at trial showing compensable "loss or damage that the decedent

4

sustained or incurred *before death*, . . . not includ[ing] any damages for pain, suffering, or disfigurement.'" *County of L.A. v. Superior Court*, 981 P.2d 68, 70 (Cal. 1999) (quoting Cal. Civ. Proc. Code § 377.34; emphasis altered). Thus, although the trial judge had discretion to "weigh the evidence" when it considered TASER's motion for a new trial, it abused that discretion by denying the motion where there was simply no evidence to weigh in support of the jury award. *See Air-Sea Forwarders, Inc. v. Air Asia Co.*, 880 F.2d 176, 190 (9th Cir. 1989). We accordingly reverse and vacate the compensatory damages award.

5. The district court also erred in awarding Appellees attorney's fees under California Code of Civil Procedure § 1021.5. Section 1021.5 permits an attorney's fees award only when a plaintiff "acts as a true private attorney general, prosecuting a lawsuit that enforces an important public right and confers a significant benefit, despite the fact that his or her own financial stake in the outcome would not by itself constitute an adequate incentive to litigate." *Flannery v. Cal. Highway Patrol*, 71 Cal. Rptr. 2d 632, 636 (Ct. App. 1998) (internal quotation marks and citation omitted); *see In re Adoption of Joshua S.*, 174 P.3d 192, 198 (Cal. 2008). The key question is "whether the financial burden placed on the party [claiming fees] is out of proportion to its personal stake in the lawsuit."

5

*Lyons v. Chinese Hosp. Ass'n*, 39 Cal. Rptr. 3d 550, 566 (Ct. App. 2006) (internal quotation marks and citation omitted).

In this case, Appellees asserted wrongful death, survival, assault and battery, and strict and negligence product liability claims against the defendants. Because Heston actually died, Appellees could reasonably expect to, and in fact did, recover substantial damages from TASER. Their recovery could have been higher had they prevailed on all their claims. Moreover, the willingness of Appellees' attorneys to take this case on a contingency fee basis—without an empirical basis to believe they would benefit from California's private attorney general statute —demonstrates that Appellees had an "adequate incentive to litigate" their claims.

6. Finally, the district court did not err in vacating the punitive damages award to the estate. As a preliminary matter, Kastner did not have standing to challenge the court's vacation of the punitive damages award to Heston's parents, who proceeded *separately* as wrongful death heirs. *See Georgia v. McCollum*, 505 U.S. 42, 55 (1992) ("[A] litigant may raise a claim on behalf of a third party [only] if the litigant can demonstrate that . . . there exists some hindrance to the third party's ability to protect its own interest.").

Under California law, punitive damages may be awarded when a plaintiff proves by clear and convincing evidence that a defendant acted with "such a

conscious and deliberate disregard of the interests of others that his conduct may be called willful or wanton." *Taylor v. Superior Court*, 598 P.2d 854, 856 (Cal. 1979) (internal quotation marks and citation omitted); *see* Cal. Civ. Code § 3294(a).  Here, TASER made efforts, albeit insufficiently, to warn its customers about the risks posed by prolonged TASER deployment.  While this may amount to negligence, it does not rise to the level "willful or wanton" conduct.  *Tomaselli v. Transamerica Ins. Co.*, 31 Cal. Rptr. 2d 433, 444 n.14 (Ct. App. 1994) (such conduct must be "inconsistent with the hypothesis that [it] . . . was the result of . . . mere negligence or other such noniniquitous human failing.").  Moreover, although the jury found that a "reasonable manufacturer" would have known that prolonged TASER deployment may cause cardiac arrest, it answered "No" to the question asking whether TASER actually "knew" of that risk.  We accordingly affirm the district court's order vacating the punitive damages award to the estate.

Each party will bear its own costs.

AFFIRMED in part, REVERSED in part.